Yes, Your Honor. Good morning, Your Honors. My name is Rory Gray, and I represent Cedar Park Assembly of God, the plaintiff appellant in this matter, and with the Court's permission, I'd like to reserve five minutes for rebuttal. Okay. We'll try. It's aspirational. May it please the Court. Usually, abortion coverage requirements come with Church exemptions, but SB 6219 didn't. The result has been that the Church has had abortion coverage directly included in its health plan for the last five years. Washington likes to cite to an old conscience law, but the insurance commissioner has never implemented that law under Section 3C in a way that would help a Church in any way. There is no— But the insurance commissioner has approved two different health insurance plans that do not have abortion coverage, right? One Primera and Providence, one secular, one religious. Well, Your Honor, it's not clear how the Primera plan was approved, on what basis it excludes abortion coverage, or if it actually excludes it, or if it's like Cigna, where the carrier still provides it. It's just not technically included in the contract. We do know for Providence that there's a separate—the conscience law provides real protection for religious carriers, and the state has allowed Providence to not have abortion coverage in its plans, and the state provides that coverage separately. But that sort of protection isn't available to Cedar Park because it's not eligible for a Providence plan. And so the state saying that somebody else's religious liberty is protected doesn't mean that Cedar Park's is in some way— Why is Cedar Park not eligible for joining Providence's plan? Your Honor, the record is absolutely clear that Providence's plan is only available in certain counties, and it's not available in the counties in which Cedar Park operates for a large employer, which Cedar Park is. So back to the point there, which is really that the state doesn't get to play religious favorites. It can't say that, yes, your concerns about facilitating abortion, Providence, are valid, but Cedar Park, your concerns about facilitating abortion aren't. The Free Exercise Clause doesn't allow the state to play religious favorites like that. If we get to a substantial burden, which I think is very clear here, under Apache Stronghold, we have coercion, which has been very clear from the beginning that Cedar Park has been required to include abortion coverage in its plan that severely violates its beliefs. So articulate your theory of standing. Of course, your Honor. Yes, Skyline and Cedar Park make standing absolutely clear here. So before SB 6219 took effect, Kaiser and other carriers provided abortion-free plans to Cedar Park and to others. After SB 6219, Kaiser stopped, and the reason is clear. It's because the law has very severe penalties, including up to 364 days in jail, fines, and carriers potentially losing their authorization to sell insurance in the state. But Kaiser has told Cedar Park that if there's some sort of an exemption for churches, it's willing to provide an abortion-free plan again. And that is very clear injury in fact, causation, and redressability. Though that's really not an issue here. This Court already decided that Cedar Park had standing, and the evidence below was pretty much exactly the same, except for we— Well, counsel, it isn't exactly the same, because as—and I may be misunderstanding the facts here, but I thought that in addition to the Providence Plan, that there was another non-abortion-covering health plan that is available. If your Honor's talking about the Premier Plan, Cedar Park isn't eligible for that. That's a small employer plan, and there's no explanation in the record as to what kind of—why there's an abortion exclusion there. So I can't really speak to that. It's not in the record. What is clear is that Cedar Park is not eligible for an abortion-excluding plan. It's been looking for one for almost five years, and has been unable to find one. And so if anybody has standing, it's most certainly a church that's been directly paying for abortion coverage in its plan for a period of five years. So how are you paying—tell us the mechanics of how you're paying for it. Well, right now, Your Honor, it's a direct payment for the abortion coverage, just like for every other aspect of the plan. You know, Washington likes to talk— Okay, so under the ACA, you have to provide maternity care, right? Yes, Your Honor. Which means then, if you provide maternity, you have to provide—I'm not going to probably say this right, but it's abortion and— Abortifacient contraceptives. Say that? Abortifacient contraceptives. Yes, abortifacient contraceptives. So how are you paying for that? Now, and with what's proposed, how would you still—you know, how do you get to, you know, how can you show that you're being injured by the present situation that you're in? Well, the present situation is very clear. Kaiser looked at SB 619 and saw the very severe penalties and said, we will not accommodate any abortion exclusions of any kind for anyone. That is absolutely clear from the record, and I can give you the cites. That's what they told Cedar Park when its insurance broker and agent asked them. That's at 5ER-772. And that's what they told the insurance commissioner in response to a complaint. And that's August 14th of 2019. You never bothered to get any further information from Kaiser after the state adopted an implementing regulation saying this statute does not affect our conscious objection law, and after the insurance commissioner adopted or approved these plans that do not provide abortion coverage, correct?  So why did you not get further information from Kaiser as to what is its policy now five years later, and is it making any decisions based on the law, SB 6219, or based on its own business reasons? Yes. If you let me finish, it's told the commissioner in response to a complaint by Seattle's Jesuit, which is a private Christian school that also wanted an abortion-free plan from Kaiser and was not able to get one, that it would not do so because of SB 619, and that's at 4ER- What's the date of that, please? 686-87. No, no, no. What's the date of that communication? It was, I do not have the communication. It was a testimony from the insurance commissioner representative that that took place, and I don't believe it- Was it in the same timeframe before the implementing regulation was adopted and before the insurance commissioner approved these non-abortion covering health insurance plans? I mean, I believe it was later than when Cedar Park spoke to them, but I don't think the timeline is exactly clear. I mean, the point is really that it doesn't matter because Cedar- If, in fact, you are entitled to and able to find a non-abortion health plan, the problem that you've just described goes away. Well, Your Honor, the district court dealt with this case for years, and it agreed with Cedar Park that it could not find an abortion-free health plan. So I'm not sure where the idea that we're just not doing something easy comes from. The church has been looking for years for an abortion-free health plan. The testimony is absolutely clear on that fact. Its insurance broker asked eight different carriers to provide, you know, basically to bid. And only- I have a separate question about standing. The coverage is, accepting your argument for the moment that the coverage for abortion is in the plan and you can't find a different one that doesn't have it. I understand the record. No employee has ever sought to access this coverage. So what then is the injury? The injury, Your Honor, is that Cedar Park's religious belief is that it is immoral and sinful to facilitate abortion in any way, including by just having the coverage in its plan, regardless if anyone ever uses it. And that's a very common religious objection. It's one that we saw in cases like Hobby Lobby and Zubik. These cases have been around for, you know, at least 10 years, probably more. Many religious people object to having anything to do with abortion. No, I understand that. But if none of your- it's sort of like if you have gallbladder coverage but no employee has ever sought it, it's hard to know what the connection is. I mean, there are many things that are covered that may never be used. And I'm not really sure if it's never used, as it has not been, what the injury is. Well, Your Honor, I don't believe the record reflects whether it's actually ever been used or not. It hasn't been to my knowledge, but that doesn't make any difference. The Supreme Court in Hobby Lobby didn't say, oh, well, you know, nobody's actually used the contraceptive coverage that you object to. This is the church's plan. It has a personal stake in its own plan. In fact, it is the only bridge between the carrier and the employee. So if- okay, so if SB 6219 does not force the church to have a plan that explicitly covers abortion care, that significantly narrows the claims, correct? SB 6219 does require the church to have direct abortion care. What Washington's saying is that the Conscience Law somehow allows that to be indirect. The Conscience Law- I guess. So if- let's assume that there's some truth to that. The church still might have standing because its employees can still access abortion indirectly through its plan, but wouldn't the free exercise and religious autonomy claims- wouldn't they shrink considerably if that were the case? No, Your Honor. The church's religious beliefs about what is immoral in terms of facilitating abortion are something that the church gets to decide. The state doesn't get to come in and say, no, you're not actually responsible for that. That's what Hobby Lobby said. And it said that you can't use something like a third party entitlement to get around the free exercise clause. Counsel, let me ask you a variant of what Judge Callahan was just talking about. And I want you to assume for the purpose of this question that a no abortion policy is available so that you would not be paying for it, it would not appear in the written policy that you have. When you pay your employees wages, they can buy whatever they want with that. So whether you have a health plan or not, one of your employees could obtain an abortion. And so in that event, I'm struggling to understand how your interest is sufficient to describe an injury. The only difference between someone who has no health plan and goes and gets an abortion and someone who has no abortion plan and goes and gets one is the price. So it seems to me that your interest really is in just making sure the price is high, but I'm not sure how that tracks your argument for standing. No, Your Honor. I mean, that situation would be very different. I can see that. I don't think any church has claimed that it has a sincere religious belief that every dollar that it's responsible for the use of every dollar it pays out. And I think that would be hard for it to show that. But in a case like what Your Honor is talking about, we'd have a very clear free exercise and religious autonomy problem. That would be a case just like Seattle's Pacific University or Union Gospel Mission of Yakima, both of which this court recently ruled in, in favor of the religious employer. Religious employers like churches, especially under the church autonomy doctrine, have a right to employ people who share their beliefs and values. And in fact, in this case, Cedar Rapids... Oh, of course they do. But you don't have a right to enforce it. If one of your employees violates that principle, you might be able to fire them, but you can't prevent them from getting the abortion. So I guess that was... And I'm not talking about your right to discipline or terminate the employee. I guess I'm just looking at the difference between an employee with or without a health plan who obtains that service. Well, Your Honor, I mean, no one... Well, it does seem, though, it would be different if you're not, if someone just goes out and gets an abortion and they pay for that. That would be a different situation than what we're talking about here. And what Judge Graber's saying, I don't know what your moral codes are with your employees or whatever, but that would be separate and apart. But I think we're trying to figure out how the situation you're presently faced with puts you in a situation where you're facilitating. I don't think you're saying you would be paying for their abortions, but somehow your religious value would be facilitating. The church objects to facilitating abortions through its health plan in any way. So obviously paying for the coverage, as Cedar Park is forced to do right now, makes the violation worse. But assuming somebody else paid for it wouldn't fix the problem. I mean, Hobby Lobby... Why wouldn't it? If it's not part of the plan, how are you even connected to it? If it were not part of the plan, if, for example, there was an exemption like there is for religious carriers, where Washington offers a separate plan that it pays for, for abortion, then that's different. I don't understand it. If you buy a plan that has no abortion coverage, period, what stake do you have in whether one of your employees can seek an abortion? I mean, I'm not asking about the moral or employment context. I'm saying what stake do you have in that decision if your coverage doesn't exist for that? Well, Your Honor, the point is that there is only one way, there's only one way of bridging the carrier and the abortion coverage, and that is Cedar Park's plan. Cedar Park has to make a contract. It has to make a relationship between the carrier and the employees, and that is the only way... I understand that, but if that contract, the hypothetical is if the contract excludes abortion coverage, you're paying for dental, vision, all the other things that one hopes are covered, the doctor visits, but no abortion, then it seems to me you have no connection to an employee's decision to go obtain an abortion, which they'll pay for by definition if it's not covered by the plan. Well, Your Honor, really what we're talking about under the Conscience Law is a shell game. It's saying we won't put it in the plan documents, but it's still provided as part of the benefits package that only results when you contract for the plan. Now, under Basically, you're saying we want it to be expensive for our employees because the only difference between the employer with a health plan and an employer without a health plan when that employee seeks abortion services, that means that one of them pays more than the other, but that doesn't seem to me to be a sufficient nexus to your interests. Your Honor, this has nothing to do with how much it costs. Cedar Park has an interest in not facilitating abortion. Hobby Lobby recognizes that interest. The government doesn't get to come in and say, no, actually, you're not facilitating abortion. That's a religious matter that Hobby Lobby says is up to the jury. I think the distinction here is you conceded that an employee using their Cedar Park wages to pay for an abortion does not cause Cedar Park to facilitate that abortion, right? You just conceded that a couple minutes ago. So how does using the health insurance card, which doesn't provide for abortion, but the employee pays their own money for an abortion, how do we distinguish using the card versus using Cedar Park's salary? The difference between one facilitating and the other not facilitating, it doesn't really seem to be a real distinction, right? How are you facilitating one instance and not the other? Well, I think it's a very clear distinction. I mean, one is using the same insurance card that Cedar Park has contracted and paid for to get abortion services and non-objectionable services. I mean, that is something that lots of religious groups object to. That's why we had the case like Zubik. This is not an unusual scenario. In terms of people using their salary to do things that Cedar Park doesn't agree with, that's a matter of standing. I mean, there's not a what kind of injury is there in Cedar Park. But in this instance, the employees are paying for an abortion out of pocket, which you conceded in the record there's no evidence that any of your employees have, and you make them sign a statement saying they will not do anything that violates Cedar Park's religious beliefs, so it's unlikely that they will. But if they were to, Cedar Park wouldn't be paying any money for the abortion. And so it's just not any different whether they use a card or use the money that Cedar Park gave them to pay for the abortion. I mean, Your Honor, I think it's very unlikely that Cedar Park would not be paying for the abortion coverage in some way. I mean, the Conscience Law makes very clear that, you know, the carriers can charge Cedar Park back for that cost. In fact, that's what Washington has started to do even for religious carriers like Providence with an inequity fee that now they have to pay in a separate pot of money that then Washington uses that money to pay for the abortion coverage. So we've asked you a lot of questions, but just summarize your theory on standing. Why that violates your religious views. Yes, Your Honor. Standing here is controlled by Hobby Lobby, Skyline, and Cedar Park. Before SB 6219, the church could get an abortion-free health plan that comported with its religious beliefs. After SB 6219, it couldn't. Kaiser and others stopped providing abortion-free plans. If the church obtains an exemption from the requirement, then Kaiser will give them an abortion-free plan again. That is clearly injury in fact, causation, and regressibility. May I reserve a little time I have left? Just finish. Well, Your Honor, we would ask that Your Honors reverse and remand with instructions to enter a permanent injunction saying that Cedar Park can't be required to include abortion coverage or its health plan, or its carrier can't be required to do that either. Thank you. Okay. After we finish, I'll give you at least a couple of minutes on rebuttal. We asked you a lot of questions. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court, Tara Heinz on behalf of the State Defendants. Under Washington law, Cedar Park is not required to pay for or provide coverage for abortions or contraceptives to which it objects. So there is nothing preventing Kaiser or any other insurance company from offering such a policy to Cedar Park. On these grounds alone, Cedar Park cannot establish Article III standing or a cognizable free exercise claim, and this Court should affirm summary judgment. Now turning to the first to the issue of Article III standing, the U.S. Supreme Court's recent decisions in Murthy and FDA v. Alliance are controlling. Here, as in Murthy, Cedar Park's alleged injury is based on the acts of a non-partier, Kaiser Permanente, not by any action by the State. And there is not one piece of evidence, much less a clear showing that is required under Murthy, demonstrating that if this Court were to take the drastic step of enjoining SB 6219, that Kaiser will offer a policy to Cedar Park excluding abortion coverage. Now the evidence here, 5ER768, which is an August 2019 email, is the piece of evidence that Cedar Park has been relying on. But what that email says is, I understand that final implementation rules for SB 6219 have not yet been released. If an exception is made to allow exclusion for abortion coverage, will Cedar Park be able to exclude that policy, that coverage immediately? And Kaiser responds in sort of vague terms that we can't support a retroactive change, but we can support a midyear change. That was back in August 2019. In December 2019, the Insurance Commissioner issued those implementing regulations. It made absolutely clear that SB 6219 does not impair or diminish any of the protections or rights available. Well, the Deputy Insurance Commissioner testified that her office did not have a set process for approving exemptions for carriers when SB 6219 would conflict with federal funding restrictions like the Weldon Amendment, and said that such requests would be referred to an attorney and assessed on a case-by-case basis. Why isn't that enough to make SB 6219 not generally applicable under FCCA versus San Jose Unified? Well, Your Honor, that's before we get to the issue of standing. But if you turn to the Employment Division v. Smith case, the actual exception under the law says that the SB 6219 does not apply when it would conflict with conditions of federal funding, and only to the minimum extent necessary to comply with those conditions. Now, whether or not something conflicts with the Weldon Amendment is an attorney-expert decision. But it is not an individualized determination made, an examination made by the state. It's simply a determination of whether there's a conflict. What the Weldon Amendment says is that states cannot discriminate against NTDs that refuse to provide abortion coverage. So the Church has said that it views enabling employee access to abortion, even indirectly, as facilitating abortion in violation of its face. Doesn't Burwell v. Hobby Lobby require us to accept that as a substantial burden on its religion? And it's not for the courts to say that a religious entity's belief that it is facilitating an immoral act is mistaken or insubstantial? So no, Your Honor. First, Hobby Lobby is not a free exercise case. It's a RFRA case. And it has a different standard. What this Court held in the recent en banc decision in Apache Stronghold is to determine whether there's a free exercise claim, you need to look at the word prohibit. What the free exercise clause does is say, you know, governments cannot prohibit the free exercise of religion. And governments only do that when they do one of four things. Either they take action that has a tendency to coerce the individual, they penalize the individual, they discriminate against the individual, or they deprive that individual of some generally available benefit. There is nothing like this in this case. The State has said- Well, the case that you cite, the FDA case, I don't think that's exactly the same thing as, I think Hobby Lobby is not the exact same thing, but I don't think the FDA is either. And so if you say that religious entities have no standing in this situation, apparently you slam the court doors shut that they can't even talk about how something, you know, their religious objections. So what, Your Honor, FDA v. Alliance says is if there's some coercive action taken against the religious entity- But wasn't that doctors objecting to that the APA wasn't followed? I mean, it was quite different than this case. It's not different in that what Cedar Park is objecting to is some third party providing coverage to its employees for abortion. So what Cedar Park says is that we do not want the insurance carriers to provide this coverage. Cedar Park has to do nothing. The SSB 6219 and the Conscience Objection Law does not require it to pay for it. It doesn't require to provide it. It doesn't require it to provide any notice of it. And the notice that actually is provided is in the record. And it's at 2 ER 254. And it specifically states your employer has chosen not to provide this benefit. That's what the insurance carrier tells the employee. Your employer is not providing this benefit. There is no connection to Cedar Park. There is no coercion on Cedar Park. And what FDA v. Alliance says is Cedar Park cannot come to federal court and object to actions that third parties might be taking. Counsel, I have a factual question that's relevant, I think, to some of this discussion. Your friend on the other side said that there are no available plans that lack abortion coverage. And I understood the record differently than that. And I'd like to have your comment. I had thought that the church received bids for health plans that did not have abortion coverage. Yes, your honor. And that one or two of them would have even been cheaper than the coverage they were getting from Kaiser. Am I mistaken about that? No, you're absolutely correct, your honor. And that's at 3R 397-398, 404-405, 487, and 420-22. Cigna offered a plan that excluded abortion coverage. And the plan was actually cheaper than the one that was offered by Kaiser. What Cedar Park was worried about is that Cigna had a reputation of offering a plan that was cheap in the first year, but that would increase in prices the following year. But what this actually shows you is that there is nothing in state law that prevents insurance companies from offering this coverage to Cedar Park. Primera is also another policy or company that offers these plans to other companies. And it's a mischaracterization of the evidence to suggest that this cannot be offered to Cedar Park. Cedar Park never asked. Cedar Park never went back to Kaiser. Well, I think they said something when they were talking in their opening argument that they weren't eligible for what they were offered. Do you want to respond to that? Yes, your honor. And if you look at that deposition testimony, what it was is a question of an OIC representative in a deposition. Do you know off the top of your head which counties this is available in? And the deponent said, I don't know. Not off the top of my head. I need to look at the plan documents. If you go back and look at the actual evidence, Cedar Park never asked Primera. There's no record evidence that they asked Primera. There is no record evidence that after the implementing regulations were passed, even though they had an email from Kaiser saying, once those implementing regulations are passed, can you make a change? They never went back and asked. There's not one shred of evidence that there was any question of Kaiser. Can you now offer this policy? And without that evidence, Murthy requires a clear showing of not only a future likelihood of harm, but that injury is fairly traceable to the state and would be redressed by this litigation. They cannot show that it's fairly traceable. Now counsel alluded to the fact that Primera may not actually exclude abortion coverage. What's in the record about what Primera actually does exclude? Primera excludes abortion coverage. It's in the record at 2 ER 172 to 174. It's offered to a Christian school and it absolutely excludes abortion coverage. What they're arguing about is that the Primera then, as a consequence of the conscience objection statute, then sends out this notice to its enrollees and say, your employer objects to providing this service. However, here is another means in which you can get this coverage. But the religious entities are not required to pay for that. They're not required to provide it. They're not required to send notice of it. And the other thing is with the Providence plan, that's the same thing. And they said Providence is somehow gets a broader exception. But Providence as an insurance carrier is subject also to the conscience objection statute. And they also send out this notice to the enrollees. They simply have not made any objection to doing so. But they send out to the notice to the enrollees. We do not provide this coverage in your insurance plan. But here's another way for you to get this coverage. You started your argument referring to the August 2019 Kaiser email. In your briefs, you objected and said that was inadmissible hearsay and on other grounds. Are you withdrawing that objection now? Your Honor, I don't think whether the court considers it or not, it's still not meeting the, you know, and we can we can withdraw the objection. If you look at that email, it's very clearly talking about implementation rules that did come in December 2019. And those couldn't be clearer. I mean, we're talking about a law that's been on the books for 40 years. So I think they were arguing somewhat law of the case because this case has been around for a while. It's actually been to the Ninth Circuit previously. And everyone that's looked at it before said they had standing, right? Yes, Your Honor. In terms of the allegations at the time of the complaint were sufficient. But Murthy is very clear that when they're seeking preliminary or injunctive relief, prospective injunctive relief, which is the only thing available to them against the state given 11th Amendment protections, that they need to make a clear showing of future injury and that future injury is fairly traceable to the state. Now, the conscience objection statute and those implementing regulations break any chain of causation. It makes very clear, Cedar Park, you do not have to pay for or provide coverage for abortions or any contraceptives to which you object. At Kaiser, there is no evidence that Kaiser is misunderstanding these regulations or statutes. But even if they did, that would not be a reasonable interpretation given this conscience protection statute has been on the books for 40 years. They're implementing regulations making very clear how insurance companies can comply with those. And other insurance carriers are offering this policy. They've been approved by the commissioner. So there is no impediment under state law in order for Cedar Park to get this policy. But second, on the redressability issue, there is not one shred of evidence that if this court were to take the drastic step of striking down a state law as unconstitutional, that that would make any change to the facts on the ground. They just didn't go back to Kaiser and say, can you offer this policy? And if not, why not? Because it's not because of SB 6219. There are now implementing regulations making very clear, go ahead and offer these policies. If these insurance carriers are not offering the policy, they're doing it for their own reasons. They're not before this court and they would not be impacted by any injunction that is made by this court. And so under Murthy, it's very clear that in that circumstance, there's simply no redressability. Your briefs treat Cedar Park's indirect injury argument as only arguing that they're trying to make abortion less available for others, but they actually have a specific health insurance card argument, which counsel made. Do you want to address that? Yes, Your Honor. And I think that goes past the issue of standing and goes into whether or not they have a cognizable free exercise claim. Because that insurance card is not required to be provided by Cedar Park. Why is that not standing, whether they have an injury or not? Well, it could go to standing, but I think it's very clear under Apache Stronghold that there is no coercion by, on Cedar Park. So that plan, that policy, sorry, that insurance card is provided by carriers. The notice is provided by carriers. The alternative mechanisms for getting abortion coverage is provided by carriers. There is not one thing that SB 6219 actually requires of Cedar Park. But if you have the insurance card, what does that entitle you to? It doesn't entitle you to anything. It's just a way for, if you go to a place to get an abortion, that they know what sort of, how the coverage is obtained. It is not provided by Cedar Park, and it's absolutely, it's not part of their contract. And the notice very specifically says that your employer does not want to provide this coverage. They object to it. It's not part of it. I want to clarify, the card, the card is not required by statute. It is not required by regulation. That's, that's right. That's right. It's the private insurance carrier's decision that this is administratively convenient to give you a card. Absolutely, Your Honor. It's simply a matter of administrative convenience, but it's not required by the statute. But still, even to the- into a contract with the insurance carrier, correct? I mean, it's a downstream consequence of that, but it is not required by Cedar Park. And I think that's what's really important under Apache Stronghold, is that the determination of whether there's been a prohibition of a free exercise of religion is not determined by solely by reference to the religious belief. Because in that context, certainly the tribe at issue in Apache Stronghold felt that they were being coerced by the sale of sacred lands. The court said the religious belief itself does not define whether there's a prohibition. You have to actually go beyond that and look at the actual state law. Does the state law coerce Cedar Park? It does not, not in one way. They have not shown one way in which it's required any action of Cedar Park. All the actions that they claim of, complain about, are actions by the insurance companies. And FDA v. Alliance is very clear that Cedar Park cannot come into federal court and complain about the actions of third parties. That that is the dividing line for purposes of separation of powers as to whether there's Article III injury. Now if the state were to coerce Cedar Park to do something, which was the issue in Hobby Lobby, not a free exercise case, but in Hobby Lobby, there was an actual law that applied to Hobby Lobby. And if Hobby Lobby did not comply, they would be fined to the tunes of $400 million per year. There's nothing like that here. The state is staying in its insurance regulations, in its briefing, in its approval of other plans. Cedar Park, you do not have to provide this coverage if you have an objection on religious or conscience grounds. So there is no cognizable claim. And these two issues are dispositive, even if you, before you get to the issue. So what's your cross-appeal on this? So the cross-appeal was the motion to dismiss for standing. We didn't actually assert the cross-appeal because we think the better way to look at standing is on the summary judgment standard and the preliminary injunction standard, which applies under Murthy and FDA v. Alliance. So, if there are no other questions on Employment Division v. Smith, you know, all of the factors there are met under FCA, a fellowship of Christian athletes. There's no more favorable treatment of comparable secular activity. Again, it's because the conscience objection statute says you don't have to provide coverage for abortions if there's an objection. And so there's really no argument that there could be favorable treatment. Primera does not have to offer these, or, you know, the secular insurance companies offering plans to religious entities don't have to provide abortion coverage, and Primera is offering that policy. There's also no system of individualized exemptions, and there is no showing that the district court clearly erred in finding no hostility. And, in fact, this plan, the SB 6219, in conjunction with the conscience objection statute, actually comports with the Supreme Court's determination in Fellowship of Little Sisters that there was a compromise that was taken. As long as the insurance carrier is providing the coverage and they're providing the notice, then in that context there would be no infringement of the religious beliefs. Cedar Park has taken that step further and says even when the insurance carrier provides that coverage, it violates our religious beliefs. But FDA, the alliance, is very clear that Cedar Park cannot come into federal court and complain of injury by actions of others that don't impact Cedar Park, that don't actually cause some injury to Cedar Park. If there are no further questions, Your Honor? There do not appear to be. We'll submit. Thank you. Thank you. Okay, I'll give you two minutes for rebuttal. Thank you, Your Honor. I want to first address the Primera plan, which I'm looking at right here, to ER 174. It is limited to 50 or fewer employees. Cedar Park has, I think, like over 100 people who have health insurance through its plan. It's not eligible for that. If you look at 2 ER 66, Cigna could not, in fact, completely exclude abortion and abortifacients in their group and level funded plans. They would still be part of Cedar Park's health insurance plan because of SB 6219's requirements. So the argument that Cedar Park is eligible for an abortion excluding plan that currently exists is false. In terms of the card, the card is proof that the abortion coverage operates through Cedar Park's plan. Carriers have to provide that coverage through Cedar Park's plan, and Cedar Park is personally responsible for its plan. FDA has nothing to do with that. That case involved the church amendments, which completely excluded religious objectors from having to do anything remotely involved with abortion, even the after effects. Washington's conscience law does nothing like that. All the conscience law says is that carriers are doing it, not you, so your facilitation objection doesn't count. But Hobby Lobby says that the government doesn't get to decide whose facilitation argument is right. If the religious carriers get an exemption, if they have a real facilitation objection, so does Cedar Park. The government doesn't get to play favorites. You can see cases like Fowler and Carson and Grumet. In terms of SGMA, the district court was very clear that the only type of plan where abortion exclusion is actually possible for Cedar Park is self-insurance. And Cedar Park can't do self-insurance because it has a gravely ill child and someone who needs an organ transplant, and it was getting for one person charges for over a million dollars a year. And its insurance broker testified that that was not workable. And I see I'm past my time. Thank you, Your Honors. Does anyone have any additional questions? No, thank you. All right. Then thank you both for your argument in this matter. This matter will stand submitted. The court will be in recess until 10.30 when we resume on an additional case. All rise.
judges: GRABER, CALLAHAN, KOH